Filed 3/3/22  P. v. Jones CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DONALD RENEE JONES,<br><br>    Defendant and Appellant. | F080027<br><br>(Super. Ct. No. VCF307814)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Kathryn T. Montejano, Judge.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Donald Renee Jones appeals his conviction for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] with the special allegation that appellant personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). Separately, appellant appeals 2 one-year prior prison term enhancements imposed pursuant to former section 667.5, subdivision (b). For the reasons set forth below, we strike the former section 667.5, subdivision (b) enhancements and otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The issues raised on appeal focus primarily on procedural or sentencing aspects of appellant's case. Accordingly, we provide a brief recitation of the facts underlying appellant's crime here, while providing additional factual and procedural discussion as each issue is considered.

On May 24, 2014, Deborah[2] heard yelling and saw a person whom she identified at trial as appellant beating up her neighbor. Deborah attempted to intervene and was struck and stabbed by appellant. Appellant then fled.

Deborah admitted at trial that the first time she positively identified appellant was at her preliminary hearing, five months after the attack. Additional evidence showed she had been unable to identify her attacker immediately after the attack. In fact, she identified two other people as potential suspects instead. Further, Deborah could not identify appellant from a picture even after identifying him at the preliminary hearing. And her neighbor, who had been intoxicated, had no recollection of the fight.

When police arrived, Deborah stated she did not know who attacked her, but described the individual and said he fled in a westbound direction from the incident. Notably, the area of the stabbing was a high police response and high foot traffic area.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to the victim by her first name. No disrespect is intended.

2.

Police eventually located a large knife in the backyard of a property west of the stabbing. The knife was found near a backpack with items containing appellant's name on them. Both appellant's palm print and Deborah's blood were found on the knife.

A few hours after the attack, police saw appellant running down a street and eventually arrested him. During the arrest and booking process, appellant asked about his backpack, admitted he owned a big knife, and made the statements that he "did not stab that girl," and, if he had stabbed her, he would have killed her.

Appellant was eventually convicted of assault with a deadly weapon, with enhancements for causing great bodily injury and for two prior prison terms.[3] The trial court sentenced appellant to 25 years to life, plus three years for the great bodily injury enhancement and two years for the two prior prison terms.

This timely appeal followed.

## DISCUSSION

Appellant raises three issues on appeal. First, appellant claims his due process rights were violated when the trial court instructed the jury with CALCRIM No. 315. Second, appellant identifies a second due process claim along with a violation of his right to a jury trial, this time based on juror misconduct. Third, appellant contends recent modifications to the law require his two prior prison term enhancements be stricken. The People concede this final point. We consider each argument in turn.

### *CALCRIM No. 315 Does Not Violate the Due Process Clause*

Appellant argues that his due process rights were violated when the trial court utilized CALCRIM No. 315 without excising the factor discussing a witness's certainty when making an identification. Recognizing that no objection was raised at trial, appellant alternatively argues ineffective assistance of counsel with respect to this issue.

---

[3] This was appellant's third trial on charges arising from this incident. Additional information regarding the procedural history of this case can be found in our prior nonpublished opinion. (*People v. Jones* (Apr. 18, 2019, F074330).)

*Factual and Procedural Background*

CALCRIM No. 315 is an instruction relating to eyewitness identification. As given by the trial court, it explained to the jury that they "must decide whether an eyewitness gave truthful and accurate testimony" and provided 14 questions to consider in evaluating identification testimony. These included concepts such as whether the witness knew or had "contact with the defendant before the event," how well the witness could see the perpetrator, and the lighting and weather conditions at the time. More directly relevant to this appeal, one question asked, "How certain was the witness when he or she made an identification?" The instruction closed by noting the "People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant guilty." Appellant raised no objection to the use of CALCRIM No. 315.

Factually, in the present case, Deborah had been unable to identify appellant prior to trial, telling officers she did not know who stabbed her and eventually selecting different people from photo lineups. In court, however, Deborah affirmatively identified appellant as her attacker. Notably, even after this identification, Deborah was unable to confirm that a picture of appellant showed her attacker.

*The Instruction Is Proper*

Appellant argues that the factor discussing witness certainty in CALCRIM No. 315 renders the instruction fundamentally unfair. Relying on dissenting positions in prior case law, appellant argues that witness certainty has been demonstrably proven to be a flawed metric in determining the accuracy of an eyewitness identification and thus, in a case such as this where eyewitness identification is a critical factor, its inclusion as a factor for the jury to consider is improper. Appellant notes that case law has rejected this position previously but relies on *People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*), which was before our Supreme Court at the time of the briefing, for the fact that this issue is still being debated.

Since appellant's briefing, both *Lemcke* and *People v. Wright* (2021) 12 Cal.5th 419 (*Wright*) have been decided by our Supreme Court. Although recognizing the changing science behind eyewitness identification, both cases reject claims that CALCRIM No. 315 violates due process. (*Lemcke*, *supra*, 11 Cal.5th at p. 661; *Wright*, at p. 292.) In each case, our Supreme Court looked at the instruction as a whole, in light of other instructions given, and considered whether the defendant had a full and fair opportunity to challenge the eyewitness identification at trial. (*Wright*, at pp. 291–292.) Where proper instructions were provided and no additional barriers to challenging the identification existed, no error was found. (*Ibid.*)

The present case is not materially different from *Lemcke* or *Wright*. The certainty factor was presented in a neutral manner, untied to the accuracy of the identification and as part of many factors for the jury to consider. Further, the instructions as a whole have not been shown to have otherwise lessened the burden of the prosecution to prove each element, including identity of the perpetrator, beyond a reasonable doubt. Even CALCRIM No. 315 worked to ensure this burden was maintained, noting specifically the burden of proof on the prosecution and the need to acquit if that burden was not met. Finally, nothing in the instruction affected appellant's ability to present a defense challenge to the identification. Indeed, the record shows that appellant was able to show Deborah had previously been unable to identify appellant as the attacker and that, even after her in-court identification, she was unable to tell if a picture of appellant showed her attacker.

As our Supreme Court has confirmed, while our understanding of eyewitness identifications may still be developing, and another look at the instruction's discussion of witness certainty is important, the inclusion of witness certainty within the many factors contained in CALCRIM No. 315 is not a due process violation. As appellant cannot demonstrate use of the instruction was erroneous or prejudicial, his claim fails whether

viewed as a direct challenge or an ineffective assistance of counsel claim.
(See *Strickland v. Washington* (1984) 466 U.S. 668, 697)

## *Alleged Juror Misconduct Is Not Reversible Error*

Appellant next argues that his rights to due process and a jury trial were violated based on juror misconduct. Appellant contends a juror actively withheld the fact they knew the judge from their youth and that this misconduct is reversible. Appellant contends the trial court erred not only in rejecting appellant's motion for a new trial on this ground, but also by not holding an evidentiary hearing on these concerns. To the extent these grounds are insufficient standing alone to warrant reversal, appellant contends their cumulative harm must be considered.

### *Relevant Facts*

The dispute here focuses upon Juror No. 3 and their conduct during voir dire. For the voir dire process, the court provided each prospective juror with a form listing 20 questions, asking them to answer the first three—name, employment, and family information—and then to identify whether they would have a "yes" answer to any of the other questions listed. After this, the lawyers were permitted to ask their own questions of the potential jurors.

At the outset of voir dire, the trial court had the attorneys for each side introduce themselves and "give [the jury] the names of … potential witnesses," explaining to the jury that it is "very important that [they] listen to those names so that as [the court and counsel] talk to [them] individually as potential jurors, if [they] know any of those individuals, [they will] want to bring that to [the court's and counsel's] attention."

When Juror No. 3 was subjected to voir dire, they provided their answers to the first three questions and then stated they had additional information with respect to questions Nos. 9 and 15 on the form. Juror No. 3 volunteered that their nephew was serving "25-to-life" and that they had previously served on a jury and did reach a verdict. The court asked additional questions about Juror No. 3's nephew and elicited that Juror

6.

No. 3 found the way the system arrived at a conviction was odd and that they had mixed feelings about the result. After this discussion the court asked whether they had "[a]ny other yes answers," to which Juror No. 3 responded, "Just the verdict, we did reach a verdict." During the attorney question phase, Juror No. 3 was asked about experiences with police officers. Juror No. 3 admitted to having received traffic tickets and discussed their view of police officer credibility.

After the trial concluded, it appears that Juror No. 3 engaged in a conversation with the prosecutor and the defense attorney. The prosecutor asked the trial court for an opportunity to make a record on those comments. The prosecutor then informed the court that Juror No. 3 had mentioned after the trial that they had grown up with the trial judge and "said something to the effect of [they were] having a difficult time sitting through this trial and pretending like [they] didn't know you." After hearing Juror No. 3's name, the trial judge noted "that last name is familiar to me, but [they are] not."

Shortly thereafter, appellant filed a motion for a new trial and request for an evidentiary hearing based on Juror No. 3's comments. Counsel filed a declaration stating that Juror No. 3 "did speak to me after the bifurcated portion of the trial and mentioned that [they] had concealed the fact that [they] knew the judge in this trial. [¶] [Their] description of the trial was that [they were] an acquaintance of the judge from high school."

The trial court held a brief hearing on the motion. At this hearing, the court focused upon any alleged prejudice that may have arisen. The court noted, "it's been 40 years since I've been in high school, and I have not seen [Juror No. 3] socially in those 40 years." The court also explained, "when I say we're not friends, I—I don't—we were not—we were not acquainted. It sounds like we come from the same very small town." The court then explained Juror No. 3 had not responded with a yes to question No. 8 on the form list, which asked, "Do you have any feelings or attitude toward the parties, attorneys or anyone else connected with the trial that would make it difficult or

impossible for you to be fair on both sides," before noting counsel's declaration did not hint at prejudice and the jury instructions had instructed jurors "not to take anything that the court has said or done as an indication of how they should vote." Based on these statements, the court denied the motion.

*Applicable Law*

"A criminal defendant has a constitutional right to an impartial jury, and the pretrial voir dire process is important because it enables the trial court and the parties to determine whether a prospective juror is unbiased and both can and will follow the law. But the voir dire process works only if jurors answer questions truthfully." (*People v. Wilson* (2008) 44 Cal.4th 758, 822.)

"Not every failure to disclose background information in response to voir dire questioning constitutes misconduct by jurors. ' "Although intentional concealment of material information by a potential juror may constitute implied bias justifying his or her disqualification or removal [citations], mere inadvertent or unintentional failures to disclose are not accorded the same effect. '[T]he proper test to be applied to unintentional "concealment" is whether the juror is sufficiently biased to constitute good cause for the court to find under … sections 1089 and [former] 1123 that he is unable to perform his duty.' " ' " (*People v. Tuggles* (2009) 179 Cal.App.4th 339, 371.) "In evaluating claims of intentional concealment by jurors during voir dire, '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' " (*Ibid.*)

"When a defendant has made a motion for a new trial based on juror misconduct, the trial court has the discretion to hold an evidentiary hearing to determine the validity of the charges if there are material, disputed issues of fact. Such a hearing is not to be used, however, as a ' " 'fishing expedition' " ' to search for possible misconduct. [Citation.] We review the trial court's decision to deny a hearing on juror misconduct for abuse of discretion. [Citation.] When reviewing the trial court's denial of a motion for a

8.

new trial based on juror misconduct, we exercise independent review on the issue of prejudice, but we accept the trial court's findings of fact if based on substantial evidence." (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1202.)

### The Record Does Not Show Error

Appellant's argument that Juror No. 3 committed misconduct warranting a new trial turns upon an assertion that Juror No. 3 withheld the fact that they had attended high school with the trial judge. However, the record does not demonstrate this is the case. Despite appellant's argument that "the venire was asked whether they recognized anyone involved in the case," the record shows that at best, prospective jurors were asked whether they knew the attorneys or witnesses in the case, whether they had any close friends or family in law enforcement, and whether they had "any feelings or attitude toward the parties, attorneys or anyone else connected with the trial that would make it difficult or impossible for [them] to be fair on both sides." Nothing in the declaration submitted by counsel, the prosecutor's statements, or the arguments on appeal here suggest that Juror No. 3 was asked whether they knew the trial judge or otherwise had an obligation in answering questions to disclose that fact. Nor does the record demonstrate that Juror No. 3 withheld evidence of bias. Rather, Juror No. 3 was asked questions about their interactions with police in the past and a family member who had been convicted of a crime. Juror No. 3 answered those questions openly and in a manner that appeared to neither favor the prosecution or the defense. In addition, Juror No. 3 indicated none of the other questions listed in the form presented warranted a "yes" response, impliedly affirming they had no feelings toward anyone connected with the trial that would affect their ability to be fair.

9.

Based on this record, there is no indication the trial court erred in denying appellant's motion.[4] The purportedly withheld information was never directly or indirectly requested of Juror No. 3 and, thus, there was no withholding of potential evidence of bias. Notably, even if we assume such a withholding, we see no basis to conclude any prejudice arose. The only potential evidence presented was that Juror No. 3 recalled attending high school with the trial judge. In contrast, the trial judge noted they had no recollection of Juror No. 3 and had not had any known social interactions with Juror No. 3 in 40 years. From these sparse facts, there is no reasonable inference of prejudice. Further, given that no withholding was affirmatively shown on the record and no inference of prejudice could be made, the trial court did not abuse its discretion in failing to hold an evidentiary hearing. (*People v. Dykes* (2009) 46 Cal.4th 731, 809–810.) Finally, having concluded no error arose, there is no possibility of cumulative error requiring reversal. (*People v. Sorden* (2021) 65 Cal.App.5th 582, 618.)

### *Appellant's Prior Prison Term Enhancements Must Be Stricken*

Appellant's third argument on appeal is that the 2 one-year prior prison term enhancements added to his sentence pursuant to former section 667.5, subdivision (b) must be stricken based on amendments to the statutory scheme made by Senate Bill No. 136 (2019–2020 Reg. Sess.). (See Stats. 2019, ch. 590, § 1, pp. 1–4, eff. Jan. 1, 2020.) The People agree that the changes made by Senate Bill No. 136 should be applied retroactively to appellant's case and, thus, that the two enhancements added to appellant's sentence should be stricken.

We agree. "Under [the amendments to section 667.5, subdivision (b)], a one-year prior prison term enhancement will only apply if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600,

---

**4** We need not resolve the parties' dispute over the admissibility of the alleged hearsay in defense counsel's declaration supporting the new trial motion. Even if admissible, the evidence does not demonstrate error.

subdivision (b)."  (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340–341.)  Neither of appellant's two prior prison term enhancement convictions satisfy the amended criteria. This court has previously held the amendments are retroactive.  (*Id*. at pp. 341–342.)  The enhancements must therefore be stricken.  While the trial court imposed a 25-year-to-life sentence, it also exercised its discretion when striking other enhancements.  We thus return the matter to the trial court for resentencing.  (See *id*. at p. 342.)

## DISPOSITION

The 2 one-year enhancements imposed pursuant to Penal Code former section 667.5, subdivision (b), are stricken.  The judgment is otherwise affirmed.  The matter is remanded for resentencing consistent with this opinion.


                                                                    HILL, P. J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.

11.